Larry Kallenberger Executive Director Department of Local Affairs Denver, Colorado 80203
Dear Mr. Kallenberger:
In a letter dated September 17, 1990, you requested an Attorney General Opinion concerning the legal status of a fire authority (hereafter, "the Authority") that may be established by the Lakewood and Bancroft Fire districts (hereafter, the "districts"). It is my understanding that the Authority will not replace the districts, but, instead, will be in addition to the districts and will provide fire protection services for the area presently served by the districts. It is also my understanding that the districts will continue to exist and perform all functions not delegated to the Authority.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Will the Authority and its employees be covered by the Colorado Governmental Immunity Act?
Yes.
2. Can the Authority enforce fire codes it adopts?
Yes.
3. Will the Authority's firefighters be eligible to participate in the Fire and Police Pension Association retirement program?
Yes.
4. Can the Authority maintain its own civil service system distinct from those of the districts?
Yes.
ANALYSIS
1. The Colorado Governmental Immunity Act (§§ 24-10-101
to 120, C.R.S. (1988) (hereafter, the "Act")), sets forth the limited circumstances when the State of Colorado and its various forms of political subdivisions may be sued for injuries which "lie in tort or could lie in tort." § 24-10-106(1), C.R.S. (1988). Only public entities are covered by the provisions of the Act. Id. Section 24-10-103(5) broadly defines "public entity" as "the state, county, city and county, incorporated city or town, school district, special improvement district, andevery other kind of district, agency, instrumentality, orpolitical subdivision of the state organized pursuant tolaw" (emphasis added). Thus, if an agency, instrumentality or political subdivision "of the State" is organized pursuant to state law, it will be considered a public entity and, therefore, will be covered by the Act's provisions.
The statutory basis for the organization of the Authority is found in § 29-1-203, C.R.S. (1986), which provides, in pertinent part, that:
 (1) Governments may cooperate or contract with one another to provide any function, service, or facility lawfully authorized to each of the cooperating or contracting units, including the sharing of costs, the imposition of taxes, or the incurring of debt, only if such cooperation or contracts are authorized by each party thereto with the approval of its legislative body or other authority having the power to so approve.
. . . .
 (4) Any such contract may provide for the joint exercise of the function, service, or facility, including the establishment of a separate legal entity to do so.
(Emphasis added.) Accordingly, the "separate legal entity" which the districts may create, the Authority, must be considered either an agency, instrumentality or political subdivision of the State to be covered by the provisions of the Act.
Two recently-enacted statutes in the same title and article as the statutory provision under which the Authority will be created would denominate the Authority as a "local government" or "governmental entity" of the State and, therefore, an "instrumentality" of the State. First, § 29-1-102, C.R.S. (1989 Supp.), the Local Government Budget Law, defines "local government" as "any authority, county municipality, city and county, district or other political subdivision of the State of Colorado; any institution, department, agency, orauthority of the foregoing" (emphasis added). Seealso § 29-1-602(5)(a), C.R.S. (1989 Supp.), the "Local Government Audit Law," for identical definition. Since the districts are each a district of Colorado, and the Authority is an authority of the districts, the Authority is a "local government" of the State. Second, §§ 29-1-204 and 204.2, C.R.S. (1990 Supp.) provide that an electric or waterauthority established by two political subdivisions organized pursuant to § 29-1-203 — the same statute under which the Authority will be formed — constitutes a "separate governmental entity." Accordingly, these statutory provisions support the position that the Authority is a local government of the State and, therefore, an "instrumentality" of the State covered by the Act. Consequently, the Authority's employees will be considered "public employees" who will be covered by the Act. §§ 24-10-103(4)(a), 24-10-106, C.R.S. (1988).
2. As quoted from § 29-1-203, above, the districts may delegate to a "separate legal entity," "any function, service, or facility lawfully authorized to each of the cooperating or contracting units." §§ 29-1-203(1), (3) and (4). Each of the districts has the power to "enforce all laws and ordinances of the State, and the several political subdivisionsthereof, relating to . . . (1) The prevention of fires . . ." § 32-5-338, C.R.S. (1973) (emphasis added). Since (1) the Authority will be a separate legal entity that possesses the powers of the districts, and (2) each district independently has the power to enforce their own ordinances, the Authority will have the same enforcement power that the districts presently possess. Thus, the Authority may adopt and enforce its own fire code.
3. The Fire and Police Pension Association (hereafter, the "FPPA") is the organization that administers the policemen's and firemen's pension plans pursuant to §§ 31-30-1001 to 1016, C.R.S. (1986). In order to be eligible for membership in the FPPA, a prospective member's employer must meet the FPPA definition of "employer." Section 31-30-1002(4), C.R.S. (1986) defines "employer" as "any municipality or special district offering fire protection service employing one or more members."
Obviously, the Authority is not a municipality. See
McQuillan, Municipal Corporations § 2.20 (where, as here, the term "municipality" is not defined, it is "generally confined in its meaning to include only municipal corporations in the proper and strict sense"). Nor, technically speaking, is it a "special district." Statutes, however, should be construed to give effect to their intent and purposes, Colorado HealthCare Ass'n v. Colorado Dept. of Social Services, 842 F.2d 1158
(10th Cir. 1988), and narrow constructions which defeat underlying legislative intent should be avoided. See,e.g., People v. Beyer, 768 P.2d 746 (Colo.App. 1987). Here, the main purpose of the FPPA statute is to provide pension benefits to individuals who are regularly employed in fighting fires on behalf of, or for, special fire districts and municipal corporations. In my view, that purpose cannot be fairly or effectively achieved unless the Authority's firefighters are eligible to participate in the FPPA. The Authority, after all, is created by the special districts for the very purpose of meeting some of the districts' fire-fighting needs. Its firefighters should, then, qualify as employees of special districts for purposes of meeting FPPA eligibility requirements.
4. Pursuant to § 29-1-203(1), (3) and (4) the districts may, by contract, delegate to the Authority "any function, service or facility lawfully authorized to each of the cooperating or contracting units." Pursuant to § 31-30-101, C.R.S. (1986), the districts are each lawfully authorized to "provide by ordinance for a paid fire department . . . and may fix, define and classify the various grades of employment in such departments." Since the districts are each lawfully authorized to maintain a civil service system, they may delegate this function to the Authority, which can then maintain its own civil service system.
SUMMARY
If established as contemplated, the Authority and its employees will be covered by the Colorado Governmental Immunity Act; the Authority can enforce fire codes it adopts; the Authority's firefighters will be eligible to participate in the FPPA; and, the Authority can maintain a civil service system.
Yours very truly
 DUANE WOODARD Attorney General
DEPARTMENT OF LOCAL AFFAIRS LOCAL GOVERNMENT, DIV. OF SOVEREIGN IMMUNITY FIRE DEPARTMENTS RETIREMENT SYSTEMS
Section 24-10-101 to 120, C.R.S. (1988) Section 32-5-338, C.R.S. (1973) Section 31-30-101, C.R.S. (1986) Sections 31-30-1002(4) and 5, C.R.S. (1986) Section 29-1-102, C.R.S. (1989 Supp.) Section 29-1-602(5)(a), C.R.S. (1989 Supp. Sections 29-1-204 and 204.2, C.R.S. (1989 Supp.)
Legal Status of Fire Authorities:
If established as contemplated, the Authority and its employees will be covered by the Colorado Governmental Immunity Act; the Authority can enforce fire codes it adopts; the Authority's firefighters will be eligible to participate in the FPPA; and, the Authority can maintain a civil service system.